IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KALLAAD W. CEPADA,                *

    Plaintiff,            *

        v.                 *   CIVIL NO.: WDQ-10-0537

BOARD OF EDUCATION OF
BALTIMORE COUNTY,                 *

    Defendant.            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Kallaad W. Cepada sued the Board of Education of Baltimore County (the "Board") for race, sex, and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), § 1981 of the Civil Rights Act of 1866 ("§ 1981"), and the Age Discrimination in Employment Act ("ADEA"). For the following reasons, dismissal without prejudice and leave to amend the complaint will be granted.

I. Background[1]

Since 1996, the Board has employed Cepada as a classroom teacher. Compl. ¶ 14; Mem. Supp. Mot. to Dismiss 1. Cepada is an African-American male who is over 50 years old. Compl. ¶¶ 12-13. In 1999, the Board assigned Cepada to Woodlawn High

---

[1] For the Board's motion to dismiss, the well-pled allegations in Cepada's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

School ("Woodlawn"), where he consistently performed "satisfactor[ily]" and has never been disciplined. *Id.* ¶¶ 16-17.

At Woodlawn, Cepada asked for the reassignment or removal of disorderly students. *Id.* ¶ 18. Although the administration honored similar requests by his Caucasian peers, Cepada's requests were "routinely ignored." *Id.* ¶¶ 18-19. School personnel also ignored Cepada's concerns about potentially violent students; the administration failed to act when a student threatened Cepada three times and told him that she would get a gun and kill him. Compl. ¶ 20. The administration did not ignore less serious concerns of his Caucasian colleagues. *Id.* ¶¶ 20-21.

Cepada was assured promotion to Dean of Students and a reduced teaching schedule for the 2007-2008 school year. *Id.* ¶ 22. Despite his qualifications, he received neither a promotion nor a reduced schedule because of his race and age. *Id.* ¶¶ 23-24. The school assigned Cepada an additional class that he was not certified to teach and has given him "less favorable teaching schedules compared to his Caucasian peers." *Id.* ¶ 25. Cepada heard the principal, a Caucasian male, make "racially insensitive comments" to African-American students and staff, such as, "'this is not soul train.'" *Id.* ¶ 26.

On January 10, 2008, Cepada sent an e-mail to the area superintendent protesting this treatment. *Id.* ¶ 27. Shortly thereafter, the principal yelled at Cepada during a staff meeting. *Id.* ¶ 28. In February 2008, a Caucasian female assistant principal also shouted at Cepada. *Id.* ¶ 29. Cepada requested meetings to discuss this treatment and "repeatedly complained" about his "hostile working environment" to administrators, including the area superintendent, but these requests were ignored. *Id.* ¶ 30.

On March 6, 2008, Cepada filed a discrimination complaint with the Board's Equal Employment Opportunity office. *Id.* ¶ 31; Paper No. 10, Ex. 4. On March 14, 2008, Cepada was placed on administrative leave. Compl. ¶ 32. In March 2008, Cepada was accused of assaulting two students. *Id.* ¶ 33. Despite surveillance camera footage that did not support the students' claims, he was suspended and placed on further administrative leave pending an investigation. *Id.* ¶ 33.

On April 7, 2008, Cepada was suspended and placed on administrative leave after a disagreement with an assistant principal, who was not disciplined even after acknowledging his participation in the disagreement. *Id.* ¶¶ 34-35. On other occasions, this assistant principal had noted that he was younger than Cepada and had referred to him as "an old man." *Id.* ¶ 36.

On April 7, 2008, Cepada filed a charge of discrimination with the Maryland Commission on Human Relations (the "MCHR"), alleging race, sex, and age discrimination and retaliation. *Id.* ¶ 8. After an MCHR investigation, the Baltimore Field Office of the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue notice on November 30, 2009. *Id.* ¶ 9; Mot. to Dismiss, Ex. 4.

On March 4, 2010, Cepada filed this complaint. On April 9, 2010, the Board moved to dismiss. On May 10, 2010, Cepada opposed the Board's motion. Paper No. 10. On June 3, 2010, the Board filed its reply. Paper No. 15.

II. Analysis

  A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts

that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "'show'" the plaintiff is entitled to relief. *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id*. (third alteration in original) (citation and internal quotation marks omitted). The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions],

5

unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B.  Title VII and ADEA Claims

Counts One, Three, and Five of the complaint allege race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.* Count Four alleges the Board violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*

After receiving an EEOC right-to-sue notice, the Title VII and ADEA claimant must file a civil action against the respondent within 90 days,[2] or lose his right to bring suit. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148–52 (1984). The 90-day period begins on the date the claimant receives the right-to-sue letter. *Brown v. Mayor of Balt.*, No. RDB 08-2549, 2010 U.S. Dist. LEXIS 10175, at *6 (D. Md. Feb. 5, 2010) (citing *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 U.S. App. LEXIS 17978, at *8 (4th Cir. July 30, 1999)).

---

[2] 42 U.S.C. § 2000e-5(f)(1) (a party has "ninety days after . . . notice [of right-to-sue to bring] a civil action"); 29 U.S.C. § 626(e) (providing that "[a] civil action may be brought under this section . . . within 90 days after the date of the receipt of such notice [of right-to-sue]").

6

When the date of receipt is disputed, Rule 6(d) assumes the right-to-sue notice was received three days after it was mailed.[3]

Cepada and the Board rely on the three-day presumption of receipt. *See* Mot. to Dismiss 5; Paper No. 10 at 7. But the parties dispute when the right-to-sue letter was mailed. The right-to-sue letter states that it was mailed on November 30, 2009. Mot. to Dismiss, Ex. 4. Cepada has offered an envelope--in which he alleges the notice was received--with the postmark December 1, 2009, but no addressee. Paper No. 10, Ex. 2.

If the EEOC mailed the notice on December 1, 2009, Cepada presumptively received it on December 4, 2009. If the mailing date was November 30, 2009, Cepada presumptively received the notice on December 3, 2009. He filed his complaint on March 4, 2010.

The 90-day time limit is "strictly enforced" and "'the plaintiff bears the burden of establishing the timeliness of the filing of her complaint whe[n] it is contested by the defendant.'" *Brown*, 2010 U.S. Dist. LEXIS 10175, at *5, *7

---

[3] *See* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."); *West v. CSX Corp.*, No. JFM-05-3256, 2006 U.S. Dist. LEXIS 6071, at *6 n.5 (D. Md. Feb. 16, 2006) (explaining this presumption).

(quoting *Darden v. Cardinal Travel Ctr.*, 493 F. Supp. 2d 773, 776 (W.D. Va. 2007)).[4]

Like the plaintiff in *Brown*, Cepada has not established that his complaint was timely. His complaint states that the EEOC issued a right-to-sue letter on November 30, 2009, and that "[h]aving met all procedural prerequisites set forth in [Title VII, he] filed the instant lawsuit, within 90 days of his receipt of the Notice [of right-to-sue]." Compl. ¶¶ 9–10. The complaint does not allege dates of mailing and receipt of the EEOC right-to-sue-letter. As Cepada has not established that his complaint was timely filed, Counts One, Three, Four, and Five[5] of the complaint must be dismissed. As the Court will grant leave to amend, the plaintiff can fix his Title VII and ADEA claims by pleading timely receipt.

---

[4] In *Brown*, a Title VII and Americans with Disabilities Act case, the plaintiff submitted a copy of an EEOC envelope postmarked June 30, 2008, and argued that his September 29, 2008, filing was timely under the three-day presumption rule. *Brown*, 2010 U.S. Dist. LEXIS 10175, at *5–7. The defendant contended that the suit was untimely and relied on the right-to-sue letter dated June 24, 2008. *Id.* at *5.
   *Brown* held that the suit was untimely because the amended complaint "inexplicitly failed to allege the dates of the mailing and receipt of the right-to-sue letter, and . . . failed to attach a sworn affidavit to support such allegations"; the court granted the motion to dismiss. *Id.* at *6–7.
[5] In this section of the Analysis, Count Five, which alleges retaliation generally, refers to retaliation under Title VII. *See* Compl. ¶¶ 82–89.

C. Section 1981 Claims

1. Discrimination

Count Two of the complaint alleges that the Board racially discriminated against Cepada in violation of 42 U.S.C. § 1981. Compl. ¶¶ 55-66. Cepada alleges that administrative personnel ignored his requests for the reassignment or removal of disruptive students, but responded to similar requests by his Caucasian peers. Compl. ¶¶ 59-60. Cepada also complains that the administration ignored his concerns about violent students--particularly when one student threatened three times to kill him with a gun--but responded to his Caucasian colleagues' concerns. Compl. ¶¶ 61-62. Cepada further contends that he received less favorable teaching schedules than his Caucasian coworkers. Compl. ¶ 63. Lastly, Cepada alleges that administrators ignored his requests for meetings to discuss his disparate treatment and "hostile working environment." Compl. ¶¶ 64-65.

To state a claim under § 1981, a plaintiff must demonstrate that: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Balt.-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003). Claims of adverse employment actions unconnected to one's race cannot constitute claims of intentional discrimination. *See, e.g., Gen. Bldg. Contractors*

9

*Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding that a defendant violates § 1981 "only by purposeful discrimination"); *Roberson v. Bowie State Univ.*, 899 F. Supp. 235, 238 (D. Md. 1995) (explaining that bare contentions that negative consequences resulted because one is a certain race "do not satisfy the level of pleading required to state a claim of intentional racial discrimination").

Here, Cepada fails to state a discrimination claim under § 1981. He does not allege that the Board intended to discriminate against him on the basis of his race. Simply asserting, for example, that school personnel disregarded Cepada's requests for relocation or removal of boisterous students, yet honored similar requests by his Caucasian colleagues, Compl. ¶¶ 59-60, cannot support a claim of intentional discrimination. Although such allegations suggest that the administration treated Cepada in a disparate manner, § 1981 is violated only by intentional racial discrimination. *See, e.g.*, *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391. Because Cepada has not pled facts alleging that the reason for his disparate treatment was his race, *see Bass*, 324 F.3d at 764-65, Count Two of the complaint must be dismissed.[6]

---

[6] The Board also seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting immunity from suit under the Eleventh Amendment. Mem. Supp. Mot. to Dismiss 9-10. The Eleventh Amendment precludes private suits against

2. Retaliation

Count Five of the complaint alleges retaliation generally, which encompasses Cepada's § 1981 claim. *See* Compl. ¶¶ 82–89. Cepada states that shortly after he sent an e-mail to the area superintendent complaining of disparate racial treatment, administrators yelled at him at a staff meeting. Compl. ¶¶ 83–85. Cepada also asserts that administrators ignored his requests to discuss his disparate treatment. Compl. ¶¶ 85–86. He further alleges that he filed a discrimination complaint with the Board's Equal Employment Opportunity office on March 6, 2008, and was placed on administrative leave on March 14, 2008. Compl. ¶¶ 87–88. Cepada also states that he was placed on administrative leave after being accused of assaulting two students, even though surveillance video did not support the accusations. Compl. ¶ 89.

---

non-consenting states and state entities in federal court. *See, e.g.*, *Roberson*, 899 F. Supp. at 237 (dismissing § 1981 claims against a State university and individual officials in their official capacities).

    Section 5-518(c) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland provides that a "county board of education may not raise the defense of sovereign immunity to any claim of $ 100,000 or less." Md. Code Ann., Cts. & Jud. Proc. § 5-518(c). The Maryland Court of Appeals has held that § 5-518(c) waived the State's governmental immunity, *including* its Eleventh Amendment immunity. *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 217, 973 A.2d 233, 243 (2009). *But see Savoy v. Charles Cnty. Pub. Schs.*, No. AW-09-788, 2010 U.S. Dist. LEXIS 10147, at *8–9 (D. Md. Feb. 5, 2010) (§ 5-518(c) waives only sovereign immunity rather than Eleventh Amendment immunity).

To establish a prima facie § 1981 retaliation claim, a plaintiff must show "(1) that he engaged in a protected activity; (2) that defendant took adverse action against him; and (3) the protected activity was causally connected to the adverse action." *Proa v. NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 471 (D. Md. 2009) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)). To establish a causal connection, the employer must have taken adverse action "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (plaintiff could not establish a prima facie retaliation case because the employer was unaware she had filed a discrimination charge); *see also Proa*, 618 F. Supp. 2d at 471.

Cepada's allegations are insufficient to plead a § 1981 retaliation claim. Even assuming that Cepada has alleged that he engaged in "protected activity"[7] when reporting his disparate treatment and that defendants took "adverse action,"[8] Cepada has

---

[7] "Protected activity" constitutes "acts and statements in opposition to policies or practices that discriminated against any person on the basis of race." *Proa*, 618 F. Supp. 2d at 472.
[8] "Adverse action" includes "retaliatory act[s] or harassment" that adversely affect the "terms, conditions, or benefits of employment." *Perkins v. Kaiser Found. Health Plan of Mid-Atl. States*, No. DKC-08-3340, 2010 WL 889673, at *6 (D. Md. Mar. 5, 2010). A plaintiff must show that the action would have deterred a "'reasonable worker from making or supporting a charge of discrimination.'" *Tawwaab v. Va. Linen Serv., Inc.*,

not asserted that the Board's actions were "*because* [he] engaged in a protected activity." *Dowe*, 145 F.3d at 657. For example, Cepada has pled that he filed a discrimination charge on March 6, 2008, and was placed on administrative leave on March 14, 2008. Compl. ¶¶ 87-88. He does not allege that filing the charge was *causally* connected to being placed on leave, or that the Board was even aware of the charge. Similarly, he does not allege that administrators yelled at him because he complained of disparate treatment. At most, his complaint "pleads facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Because Cepada has not alleged facts establishing all elements of his § 1981 retaliation claim, *see Bass*, 324 F.3d at 764-65, Count Five[9] must be dismissed.

D. Leave to Amend

Embedded in Cepada's opposition to the motion to dismiss is Cepada's request for leave to amend his complaint. Paper No. 10 at 11-12. Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required . . . 21 days

---

No. AW-09-00553, 2010 WL 3000801, at *19 (D. Md. July 28, 2010) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).
[9] In this section of the Analysis, Count Five, which alleges retaliation generally, refers to retaliation under § 1981. *See* Compl. ¶¶ 82-89.

13

after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1). Because Cepada seeks leave to file an amended complaint more than 21 days after the Board moved to dismiss under Rule 12(b)(1) and (b)(6), he may amend his pleading only if the opposing party consents or with "the court's leave." Fed. R. Civ. P. 15(a)(2); *Rice v. PNC Bank, N.A.*, No. PJM 10-07, 2010 U.S. Dist. LEXIS 40424, at *4–5 (D. Md. Apr. 26, 2010).

Rule 15(a)(2) instructs that leave should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2). Accordingly, leave should be denied only when amending the complaint would prejudice the opposing party, amount to futility, or reward bad faith on the part of the movant. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). As these concerns are not present, Cepada's request for leave to amend his complaint will be granted as to all counts.

III. Conclusion

For the reasons stated above, the Board's motion to dismiss will be granted without prejudice, and Cepada's request for leave to amend his complaint will be granted.

| | |
|---|---|
| September 23, 2010<br>Date | _____/s/_____<br>William D. Quarles, Jr.<br>United States District Judge |