IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KALLAAD W. CEPADA,

    Plaintiff,

      v.                      CIVIL NO.: WDQ-10-0537

BOARD OF EDUCATION OF
BALTIMORE COUNTY,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Kallaad W. Cepada sued the Board of Education of Baltimore
County (the "Board") for race, sex, and age discrimination and
retaliation in violation of Title VII of the Civil Rights Act of
1964 ("Title VII"),[1] § 1981 of the Civil Rights Act of 1866 ("§
1981"),[2] and the Age Discrimination in Employment Act of 1967
("ADEA").[3] For the following reasons, the Board's motion to
dismiss will be granted in part and denied in part.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 42 U.S.C. § 1981.

[3] 29 U.S.C. §§ 621 *et seq.*

I.    Background[4]

Cepada is an African-American male over 50 years old.  Am.
Compl. ¶¶ 12-13.  In 1996, the Board hired him as a classroom
teacher.  *See id.* ¶ 14.  In 1999, Cepada was assigned to Wood-
lawn High School ("Woodlawn").  *Id.* ¶ 15.  He taught full-time
during the day and also taught night school.  *See id.* ¶ 43.  He
consistently performed "satisfactor[ily] or above."  *Id.* ¶ 16.

At Woodlawn, Cepada asked administrators to remove or
reassign disruptive students.  *Id.* ¶ 18.  Although similar
requests by Caucasian teachers and female teachers were honored,
Cepada's requests were "routinely ignored."  *Id.* ¶¶ 19, 83.

Sometime in or before 2007, Cepada was promised that if he
returned to Woodlawn for the 2007-2008 school year, he would be
promoted to Dean of Students because of his "ability to influ-
ence and direct students."  *Id.* ¶ 22.  He was also promised a
reduced teaching schedule.  *Id.*  However, Cepada received
neither the promotion nor a reduced teaching schedule.  *Id.* ¶
23.  He was given an extra class that he was uncertified to
teach.  *Id.* ¶ 24.

"Over time," Cepada was given "less favorable teaching
schedules" compared to his Caucasian colleagues and female
colleagues.  *Id.* ¶¶ 25, 86.  Cepada also heard the principal, a

---

[4] For the Board's motion to dismiss, the well-pled allegations in
Cepada's complaint are accepted as true.  *See Mylan Labs., Inc.
v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Caucasian male, make "racially insensitive comments" to African-American staff or students, such as, "this is not soul train." *Id.* ¶ 26.

On January 10, 2008, Cepada e-mailed the area superintendent about his "disparate treatment." *Id.* ¶ 27. "Shortly thereafter," the principal yelled at Cepada during a staff meeting. *Id.* ¶ 28.

On January 15, 2008, a female student threatened Cepada three times and told him that she would leave school, get a gun, and kill him. *See id.* ¶¶ 20, 29. That day, Cepada e-mailed the principal, an assistant principal, the Dean of Students, and a school security officer, presumably about these threats. *See id.* They ignored him. *Id.* The next day, the same student threatened Cepada while school security was present, but no action was taken. *Id.* ¶ 30. During "similar incidents" involving Cepada's Caucasian peers and female peers, the administration "was responsive to their concerns about safety." *Id.* ¶¶ 21, 85.

On January 17, 2008, Cepada asked an assistant principal, a Caucasian female, about disciplining the female student. *Id.* ¶ 31. The assistant principal then "yelled at [Cepada] in total disregard of his status as a professional educator." *Id.* In February 2008, the same or another Caucasian female assistant principal yelled at Cepada. *Id.* ¶¶ 59, 96.

Cepada repeatedly e-mailed the superintendent and other

3

administrators about his "hostile working environment" and to set up meetings about his "disparate treatment," but was ignored. *Id.* ¶ 32. Sometime before March 2008, the school told Cepada that he would be officially reprimanded if he sent more e-mails to administrators, and to contact the Board's Equal Employment Opportunity ("EEO") office if he was unsatisfied. *Id.* ¶ 33.

On March 6, 2008, Cepada filed a discrimination charge with the Board's EEO office. *Id.* ¶ 34.

On March 14, 2008, Cepada was accused of assaulting two students. *Id.* ¶ 35. Although the administration "knew that surveillance camera [footage] did not support the [students'] claims," Cepada was suspended and placed on administrative leave pending an investigation. *Id.* ¶ 35. On March 18, 2008,[5] Cepada was told not to attend a PTA meeting that evening. *Id.* ¶ 36.

On April 7, 2008, Cepada was again suspended and placed on administrative leave after a disagreement with a male assistant principal. *Id.* ¶ 37. The assistant principal was not disciplined "even though he acknowledged his actions." *Id.* ¶ 38. On other occasions, the assistant principal had noted that he was younger than Cepada, and "constantly refer[red]" to Cepada as an "old man." *Id.* ¶ 39.

---

[5] Although the complaint states "March 18, 2009," the Court assumes this was a typographical error and that Cepada meant 2008; the preceding allegations note March 2008 and subsequent allegations note April 2008. Am. Compl. ¶¶ 34-35, 37, 40.

4

Sometime in or before April 2008, Cepada discussed his "disparate treatment" with his State Delegate. *See id.* ¶ 40. On April 24, 2008, Cepada spoke to the superintendent, who "criticized [Cepada for using im]proper protocol" when contacting the Delegate. *Id.* The superintendent also told Cepada that he could not return to his classroom "until [after] the EEO investigation." *Id.* ¶ 41.

After that, Cepada's union representative spoke to Woodlawn officials. *See id.* ¶ 42. The representative learned that they thought it was in the "best interest" of the students, administrators, and Cepada for him to stay "on administrative leave pending the outcome of the [EEO] investigation." *Id.*

Cepada never returned to Woodlawn. *Id.* ¶ 44. Because he remained on administrative leave, he "los[t] status and pay as a teacher in night school." *Id.* ¶ 43.[6] He was transferred to another school for the 2008–2009 school year. *Id.* ¶ 45.

On May 20, 2008, Cepada filed a Charge of Discrimination with the Maryland Commission on Human Relations (the "MCHR"), alleging race, sex, and age discrimination and retaliation.

---

[6] Although the Board argues that Cepada was suspended and placed on leave with pay, it is unclear whether the Board means that he was paid as a full-time day *and* night school teacher while on leave, or just as the former. *See* Mot. to Dismiss 7. Regardless, Cepada's complaint and opposition to the Board's motion to dismiss assert that he lost status and pay as a night school teacher, and the Court must accept this allegation as true. *See* Am. Compl. ¶ 43; ECF No. 26 at 6; *Mylan Labs.,* 7 F.3d at 1134.

Mot. to Dismiss, Ex. 1 at 2.[7]  On May 23, 2008, the Equal

Employment Opportunity Commission (the "EEOC") issued a Notice

of Charge of Discrimination to the Board.  Mot. to Dismiss, Ex. 2.

The MCHR conducted an investigation "without making a

determination."  Am. Compl. ¶ 9.  On November 30, 2009, the EEOC

issued Cepada a right-to-sue notice.  Am. Compl., Ex. A.

On March 4, 2010, Cepada sued the Board for race, sex, and

age discrimination and retaliation in violation of Title VII, §

1981, and the ADEA.  On September 27, 2010, Cepada's complaint

---

[7] Although Cepada alleges that he filed the MCHR charge on April
7, 2008, Am. Compl. ¶ 8, the charge--attached by the Board as an
exhibit--was signed by him on May 20, 2008.  Mot. to Dismiss, Ex.
1; *see also* Mot. to Dismiss, Ex. 3 (May 23, 2008 MCHR letter to
the Board that Cepada's MCHR charge had been filed on May 20,
2008).  A court may consider an exhibit attached to a motion to
dismiss if the exhibit is "integral to and explicitly relied on
in the complaint," and the plaintiff does not challenge its
authenticity.  *Am. Chiropractic Ass'n v. Trigon Healthcare,
Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).  Cepada has explicitly
relied on the MCHR charge, which is integral to the complaint's
administrative history, and has not challenged the authenticity
of the exhibit.
    Cepada's MCHR charge notes that he suffered discrimination
and retaliation from January 1, 2008 to April 7, 2008.  Mot. to
Dismiss, Ex. 1.  The allegations in an administrative charge
must be "reasonably related" to the allegations in the subse-
quent lawsuit.  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th
Cir. 2005).  The Board asserts that the Court lacks jurisdiction
over any allegations concerning events after April 7, 2008.
Mot. to Dismiss 5 n.3.  However, the complaint's post-April 7,
2008 allegations are reasonably related to the discrimination
and retaliation allegations in the MCHR charge.  *See, e.g.*, Am.
Compl. ¶ 41 (alleging that on April 24, 2008, the superintendent
forbid Cepada from his classroom until after the EEO investiga-
tion).  Thus, the Court has jurisdiction over all Cepada's
allegations.

6

was dismissed without prejudice for failure to: establish that he sued under Title VII and the ADEA within 90 days of receiving the right-to-sue notice; and state a claim under § 1981. ECF No. 16. He was granted leave to amend all counts. *Id.* at 14. On October 23, 2010, Cepada filed an amended complaint.[8] On November 12, 2010, the Board moved to dismiss. On December 13, 2010, Cepada opposed that motion. ECF No. 26. On January 13, 2011, the Board filed its reply. ECF No. 29.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001).

Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each

---

[8] Cepada's amended complaint and attached exhibits establish that he sued within 90 days of receiving the right-to-sue notice.

element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).

"[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id.* (citation and internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unrea-

sonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. The Board's Motion to Dismiss

1. Race and Sex Discrimination Claims

Counts One, Two, and Three allege that the Board discriminated against Cepada because of his race and sex in violation of Title VII and § 1981.

Cepada alleges that although he was promised a promotion to Dean of Students and a reduced teaching schedule, he received neither because of his race. Am. Compl. ¶¶ 53-54. He asserts that his Caucasian and female peers received better schedules. *Id.* ¶¶ 55, 71, 79, 86.

Cepada alleges that the administration ignored his requests to remove or take action against disruptive and violent students, but "respon[ded]" to dangerous student incidents involving his Caucasian and female colleagues. *Id.* ¶¶ 49-52, 67-70, 82-85. Cepada asserts that his repeated complaints to administrators about his "disparate treatment" and "hostile working environment" were ignored. *Id.* ¶¶ 57, 60, 72-73, 82, 84.

Cepada alleges that the Caucasian principal made "racially insensitive comments" to African-American staff or students. *Id.* ¶ 56. Cepada also asserts that he was yelled at "because of

his race" by a Caucasian assistant principal. *Id.* ¶ 59.[9]

In moving to dismiss, the Board asserts that (1) the Eleventh Amendment bars Cepada's § 1981 claims, and (2) Cepada has failed to state a claim. Mot. to Dismiss 2, 13; ECF No. 29 at 13.

a. Eleventh Amendment Immunity

The Eleventh Amendment bars private suits against nonconsenting states and state entities in federal court. *Gray v. Laws*, 51 F.3d 426, 430-31 (4th Cir. 1995). A state statute waives Eleventh Amendment immunity if it "specif[ies] the State's intention to subject itself to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1974).

In Maryland, a "county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." Md. Code Ann., Cts. & Jud. Proc. § 5-518(c).[10] The Board argues

─────────────────

[9] Counts One and Two also allege: "shortly" after complaining to the superintendent about disparate treatment, Cepada was yelled at by the principal during a staff meeting; the administration threatened to officially reprimand Cepada if he sent more complaining e-mails, and told him to contact the Board's EEO office instead; and after Cepada filed a discrimination charge with the Board's EEO office, he was suspended and placed on administrative leave for student assault even though the administration knew that surveillance video did not support the accusations. Am. Compl. ¶¶ 57-58, 61-62, 72-75. These contentions, some of which are alleged in Cepada's Title VII and § 1981 retaliation claims (Counts Five and Six), will be discussed in the retaliation section. *See infra* Part II.B.3.

[10] Cepada seeks back wages, $1 million in compensatory damages, and $1 million in punitive damages. Am. Compl. 15.

that § 5-518(c) does not "contain a forum provision wherein [Maryland] voluntarily subjects itself to the jurisdiction of a federal court." Mot. to Dismiss 9 & n.6. However, as Cepada notes, the Maryland Court of Appeals has held that § 5-518(c) "waives the Board's governmental immunity, including its Eleventh Amendment immunity."[11] Thus, Cepada may pursue each § 1981 claim[12] up to $100,000.[13]

b. Discrimination under Title VII and § 1981

Title VII prohibits an employer from discriminating against an employee because of race or sex.  42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees that all citizens shall have the same right to "make and enforce contracts . . . as is enjoyed by [Caucasian] citizens."  42 U.S.C. § 1981.  Under these statutes, a plaintiff may pursue failure to promote, disparate treatment,

---

[11] *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 216-17, 973 A.2d 233, 242-43 (2009) (§ 5-518(c) waived the Board's Eleventh Amendment immunity in ADEA case; "[Maryland has] specified its intention to subject itself to suit in federal court [because] the words 'any claim' in § 5-518(c) encompass a claim brought in either state or federal court." (*citing Atascadero,* 473 U.S. at 241)); *see also Lee-Thomas v. Bd. of Educ. of Prince George's Cnty.*, No. CBD-08-3327, 2010 WL 2365673, at *1-*3 (D. Md. June 8, 2010) (§ 5-518(c) waived school board's Eleventh Amendment immunity as to Americans with Disabilities Act claims (*citing Zimmer-Rubert*, 409 Md. at 203, 973 A.2d at 235)).

[12] Counts Two (discrimination) and Six (retaliation).  *See infra* Part II.B.1.b, 3.

[13] *See, e.g.*, *Zimmer-Rubert*, 409 Md. at 203-05, 973 A.2d at 235-36 (plaintiff could pursue damages under ADEA claim "for the amount of $100,000").

11

and hostile work environment theories. *See, e.g.*, *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.5 (4th Cir. 2004); *Connor v. Giant Food, Inc.*, 187 F. Supp. 2d 494, 496 (D. Md. 2002).

i.     Failure to Promote

To establish a *prima facie* failure to promote claim under Title VII or § 1981, the plaintiff must show that he: (1) is a member of a protected class; (2) applied for an open position; (3) was qualified; and (4) was rejected under circumstances "giving rise to an inference of unlawful discrimination." *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

Cepada is a member of two protected classes: African-Americans and males. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983); *Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004). He has alleged that although he was qualified for the Dean of Students position, he was not promoted because of his race. Am. Compl. ¶ 54. However, Cepada has not alleged that the Dean of Students position was open, and he applied for it, only that he was promised that position if he returned to Woodlawn the next school year. *Id.* ¶ 53.[14] Further, had the position been open and Cepada applied,

---

[14] *Cf. Murdock v. Northrop Grumman PRB Sys.*, 162 F. Supp. 2d 431, 432 (D. Md. 2001) (female plaintiff's failure to promote claim failed because it was "based upon an allegation that she had been promised an upgrade when she was hired that she was not

the Court would be unable to infer that unlawful discrimination prevented his promotion because Cepada has not alleged that a non African-American employee was appointed Dean of Students.[15] Thus, Cepada's Title VII and § 1981 failure to promote claims must be dismissed.

ii.  Disparate Treatment

To establish a *prima facie* disparate treatment claim under Title VII or § 1981, the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

An adverse employment action is a discriminatory act that adversely affects the "terms, conditions, or benefits" of employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Typically, an adverse action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

given," not that she applied for "an open position . . . to which a man was promoted").

[15] *See, e.g.*, *Carter*, 33 F.3d at 458 (African-American employee was entitled to an inference of unlawful discrimination because the position he applied for was filled by a Caucasian applicant).

13

Cepada has alleged that he was not given a promised reduced teaching schedule because of his race, and "over time," he was "given less favorable teaching schedules" compared to Caucasian and female teachers. Am. Compl. ¶¶ 54-55, 71, 79, 86. These are not adverse actions; Cepada has not alleged a loss of pay, benefits, job title, or responsibility. *See Boone*, 178 F.3d at 255. Assuming that not being promoted to Dean of Students was a "reduced opportunit[y] for promotion" and thus an adverse action, *see id.*, Cepada has not alleged that a similarly-situated female or non African-American employee was promoted to that position.[16] Thus, Cepada's Title VII and § 1981 disparate treatment claims must be dismissed.

### iii. Hostile Work Environment

To establish a Title VII or § 1981 hostile work environment claim, the plaintiff must show that the offending conduct was: (1) unwelcome; (2) based on race or sex; (3) subjectively and objectively severe or pervasive enough to alter the plaintiff's conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).

---

[16] *See, e.g.*, *Pannell v. Nicholson*, No. 7:06cv00088, 2008 WL 565098, at *5 (W.D. Va. Feb. 29, 2008) (although the male plaintiff may have suffered a reduced opportunity for promotion to assistant chief of his organization, his disparate treatment claim failed because he had not shown that a similarly-situated female employee had been promoted to that position).

14

An employee's complaint about the offending conduct indicates that he found it unwelcome. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008). To establish that the conduct was based on race or sex, the plaintiff must show that "but for" his race or sex, he "would not have been the victim of the alleged discrimination." *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007).

In determining whether the offending conduct was sufficiently severe or pervasive to alter the plaintiff's employment conditions and create an abusive environment, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Sunbelt Rentals*, 521 F.3d at 315. The plaintiff must show more than simple teasing, offhand remarks, and isolated incidents (unless "extremely serious"). *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988). A hostile work environment is imputable to the employer if supervisors knew about the offending conduct but failed to "respond with remedial action[.]" *Sunbelt Rentals*, 521 F.3d at 319.

Although Cepada has alleged that the principal said "this is not soul train" and "other racially insensitive comments," Am. Compl. ¶ 56, Cepada has not described "where or when [the other] statements were made, or what [the principal] said except

15

that the statements were similar."[17]  Cepada's contention that a

Caucasian assistant principal "yelled at [him] because of his

race" is also inadequate because Cepada has not shown that this

incident was "extremely serious."  See Am. Compl. ¶ 59; Faragher,

524 U.S. at 775.

However, Cepada has also alleged that the administration

ignored his requests to remove or take action against disruptive

and violent students, such as the one who threatened to kill him

with a gun.  Am. Compl. ¶¶ 49-52, 67-70.  Allegations of phys-

ical threats indicate an abusive environment and an objective

change to employment conditions.  See Sunbelt Rentals, 521 F.3d

at 315, 318.  Cepada's allegation that administrators were

"responsive" to dangerous student incidents involving his

Caucasian and female colleagues raises the reasonable inference

that "but for" Cepada's race or sex, he would not have been

ignored.[18]  Further, because Cepada has alleged that he frequent-

---

[17] Jordan, 458 F.3d at 341-43 (employee's allegation that his co-
worker had made one specific racist remark and other "similar
statements" was insufficient to show "severe or pervasive con-
duct that creates a hostile work environment").

[18] See Am. Compl. ¶¶ 49-52, 67-70, 82-85; Iqbal, 129 S. Ct. at
1949; Bliss v. Bd. of Educ. of the Rochester City Sch. Dist.,
196 F. Supp. 2d 314, 319-20, 325 (W.D.N.Y. 2003) (Caucasian
teacher who was attacked and harassed by students failed to
establish a prima facie racially hostile work environment case
because she had not demonstrated that "the [school] district's
alleged failure to act concerning these student-teacher problems"
was because of her race); Murphy v. Bd. of Educ. of the Rochester
City Sch. Dist., 273 F. Supp. 2d 292, 312 (W.D.N.Y. 2003) (dis-

ly complained about his safety concerns to the superintendent
and other administrators, he has shown that his workplace was
subjectively hostile, the lack of concern was unwelcome, and the
administration knew about the dangerous environment but failed
to take remedial action. *See* Am. Compl. ¶¶ 57, 60, 72-73, 82,
84; *Sunbelt Rentals*, 521 F.3d at 314, 319; *EEOC v. Cent. Whole-
salers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009). Thus, Cepada
has sufficiently alleged a hostile work environment claim under
Title VII and § 1981.

Accordingly, the Board's motion to dismiss Counts One, Two,
and Three must be granted on Cepada's failure to promote and
disparate treatment claims, and denied on his hostile work
environment claim.

2. Age Discrimination Claim

Count Four alleges that the Board violated the ADEA by dis-
criminating against Cepada because of his age. Cepada asserts
that he was not promoted to Dean of Students or given a promised
reduced teaching schedule because of his age. Am. Compl. ¶ 23.
Cepada also contends that an assistant principal "constantly
refer[red]" to him as an "old man," and noted "how young he is
in comparison to [Cepada]." *Id.* ¶ 90. Cepada alleges that he

_____

missing male teacher's hostile work environment claim alleging
that he was "subjected to the danger of student violence"; he
had not shown that the school's "male teachers were particularly
at risk").

17

was "disciplined"--presumably by being placed on leave--after having a disagreement with this assistant principal, but the assistant principal was not disciplined even after "acknowledg-[ing] his actions." *See id.* ¶¶ 37, 91-92. The Board asserts that Cepada has failed to state a claim. Mot. to Dismiss 5.[19]

The ADEA prohibits an employer from discriminating against an employee who is 40 or older because of his age. 29 U.S.C. §§ 623(a), 631(a). Like Title VII and § 1981, the ADEA recognizes failure to promote, disparate treatment, and hostile work environment claims.

a. Failure to Promote

To establish a *prima facie* ADEA failure to promote claim, the plaintiff must show that: (1) he is at least 40; (2) he applied for an open position; (3) he was rejected even though qualified; and (4) the position remained open or was filled by a similarly-qualified applicant substantially younger than him. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Although Cepada is over 50, he has alleged only that he was promised the Dean of Students position if he returned to Woodlawn, not that the position was open, and he applied for it. *See* Am. Compl. ¶¶ 13, 22; *Laber*, 438 F.3d at 430. Had the Dean of Students posi-

---

[19] The Board alternatively argues that the Eleventh Amendment bars Cepada's ADEA claim. Mot. to Dismiss 8. As stated above, Maryland has waived the Board's Eleventh Amendment immunity. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-518(c); *Zimmer-Rubert*, 409 Md. at 217, 973 A.2d at 243; *supra* Part II.B.1.a.

tion been open and Cepada applied, he has not alleged that it remained open or was filled by a similarly-qualified, substantially younger applicant. *See id.* Thus, Cepada's ADEA failure to promote claim must be dismissed.

b. Disparate Treatment

An ADEA disparate treatment plaintiff must allege: (1) he is at least 40; (2) adverse employment action; (3) satisfactory job performance; and (4) similarly-situated younger employees received more favorable treatment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *White*, 375 F.3d at 295. That he was "similarly situated" to the favorably treated employee requires a showing of "similar[ity] in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). This includes having the same supervisor, being subject to the same standards, and engaging in conduct of comparable culpability or seriousness. *See id.* (*citing Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Cepada's allegation that his age prevented him from receiving a promised reduced teaching schedule is not an adverse action; Cepada has not asserted that the schedule he *was* assigned caused him to lose pay, benefits, title, or responsibility. *See* Am. Compl. ¶ 23; *Boone*, 178 F.3d at 255-56. Had Cepada suffered an adverse action by not being promoted to Dean of Students, he has

19

not alleged that a similarly-situated, younger than 40 employee filled that position. *See White*, 375 F.3d at 295.

Further, although Cepada contends that only he was disciplined after his disagreement with a younger assistant principal, Cepada has not shown that they were similarly situated. *See* Am. Compl. ¶¶ 91-92. Cepada has not alleged that he and the assistant principal had the same supervisor or were subject to the same standard of conduct.[20] Further, Cepada has not indicated that the assistant principal's behavior during the disagreement was as culpable or serious as his. *See Haywood*, 387 F. App'x 355 at 359. Thus, Cepada's ADEA disparate treatment claim must be dismissed.

c. Hostile Work Environment

To establish a *prima facie* ADEA hostile work environment claim, the plaintiff must show that the offending conduct was: (1) unwelcome; (2) based on his age; (3) subjectively and objecttively severe or pervasive enough to alter his conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. *See Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006). Conduct that "objectively give[s] rise to bruised or wounded feelings," such as a supervisor's "callous behavior,"

---

[20] *See, e.g., Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) (supervisor was not similarly situated to non-supervisory employee; they were subject to different standards of conduct).

does not satisfy the severe or pervasive standard. *Sunbelt Rentals*, 521 F.3d at 315-16.

Although Cepada has alleged that the assistant principal noted that he was younger and constantly called Cepada an "old man," *id.* ¶ 90, these comments did not create an objective change to employment conditions or an abusive atmosphere.[21] Further, because Cepada has not alleged that supervisors knew about these comments and failed to take action, he has not shown that the assistant principal's conduct is imputable to the Board. *See Sunbelt Rentals*, 521 F.3d at 319. Thus, Cepada's ADEA hostile work environment claim must be dismissed.

Accordingly, the Board's motion to dismiss Count Four must be granted.

3. Retaliation Claims

Counts Five and Six allege that the Board retaliated against Cepada in violation of Title VII and § 1981.

Cepada alleges that on January 10, 2008, he sent an e-mail complaining about his racially disparate treatment to the super-intendent. Am. Compl. ¶ 94. Cepada contends that "shortly thereafter," he was yelled at by the principal during a staff

---

[21] *See, e.g., Collier v. Serv. Am. Corp.*, 934 F. Supp. 168, 171-72 (D. Md. 1996) (plaintiff who demonstrated that he had been called "old man" multiple times and that he and several other older employees had been discharged could not establish employer's intent to discriminate based on age; "[t]he most that [could] be said of [those remarks was] that they were insensitive," and the plaintiff had not provided the ages of retained employees).

meeting "because of [the] complaints." *Id.* ¶ 95. Cepada also
contends without elaboration that a Caucasian female assistant
principal yelled at him in February 2008. *Id.* ¶ 96.

Cepada alleges that he repeatedly e-mailed administrators
about his hostile work environment and disparate treatment, but
was ignored. *Id.* ¶ 97. He contends that sometime before March
2008, the school threatened to officially reprimand him if he
sent more complaining e-mails to administrators, and told him to
contact the Board's EEO office instead. *Id.* ¶ 74.

Cepada alleges that on March 6, 2008, he filed a discrimi-
nation charge with the Board's EEO office. *Id.* ¶¶ 98, 107. He
asserts that on March 14, 2008, he was accused of assaulting two
students, and was suspended and placed on administrative leave.
*Id.* ¶¶ 100, 109. Cepada alleges that the school "knew that sur-
veillance camera [footage] did not support" the accusations. *Id.*
Cepada also asserts that on March 18, 2008, he was prohibited
from attending a PTA meeting that evening because he had "com-
plain[ed]" about the school's discriminatory conduct. *Id.* ¶ 110;
*see also id.* ¶ 101.

Cepada contends that in or before April 2008, he discussed
his disparate treatment with a State Delegate. *See id.* ¶¶ 102,
111. He alleges that on April 24, 2008, the superintendent
"criticized [Cepada for using im]proper protocol" when contacting
the Delegate, and prohibited Cepada from returning to his

22

classroom "until [after] the EEO investigation." *Id.* ¶¶ 102-03, 111-12. Cepada asserts that his union confirmed that the administration wanted to keep him on leave "pending the outcome of the [EEO] investigation." *Id.* ¶¶ 104, 113.

Cepada asserts that because he was placed on leave, he "los[t] status and pay as a teacher in night school." *Id.* ¶ 43. He seeks "appropriate back wages and benefits." *Id.* at 15.

The Board asserts that Cepada has failed to state a claim. Mot. to Dismiss 2.

To establish a *prima facie* retaliation claim under Title VII or § 1981, the plaintiff must show: (1) protected activity; (2) "materially" adverse employment action; and (3) a causal connection between the protected activity and materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003).

a. Protected Activity

Under Title VII, an employee engages in protected activity if he opposes an "unlawful employment practice" like discrimination. 42 U.S.C. § 2000e-2(a)(1), -3(a). Protected activity under § 1981 includes opposing "policies or practices that discriminated against any person on the basis of race." *Proa v. NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 471-72 (D. Md. 2009).

Cepada has shown that he engaged in protected activity by

23

alleging that he e-mailed administrators opposing the school's discriminatory conduct,[22] filed a discrimination charge with the Board's EEO office,[23] and notified his State Delegate about his disparate treatment.[24] Am. Compl. ¶¶ 94, 97-98, 107, 111.

b. Materially Adverse Action and Causal Connection

A "materially" adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68; *see also Harman v. Unisys Corp.*, 356 F. App'x 638, 641 (4th Cir. 2009). Because employees are protected "not from all retaliation, but from re-taliation that produces an injury or harm," materially adverse actions do not include "trivial" harms. *See Burlington*, 548 U.S. at 67-69, 72-73. If the employer takes the action "shortly after" learning about the protected activity, courts may infer a causal connection between the two. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).

---

[22] *See, e.g., Ali v. Energy Enter. Solutions, LLC*, No. DKC-09-1628, 2010 WL 2253653, at *6 (D. Md. June 2, 2010) (employee's letter to his supervisors "opposing disparate [treatment]" was protected activity).

[23] *See, e.g., Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (opposing a practice includes making an "informal grievance").

[24] *See, e.g., Laughlin*, 149 F.3d at 259 ("voicing one's opinions in order to bring attention to an employer's discriminatory activities" is protected opposition activity).

Cepada's allegations that he was yelled at for complaining about his discriminatory treatment and "criticized" for contacting his State Delegate are not materially adverse actions.[25] Nor is Cepada's allegation that the school threatened to officially reprimand him if he sent more complaining e-mails to administrators. *See* Am. Compl. ¶ 74. Cepada has not alleged that he was yelled at or criticized in an effort to prevent him from making a discrimination charge. He has alleged that the administration told him to contact the Board's EEO office instead of sending more e-mails; he later filed a charge. *See id.* ¶¶ 74, 98, 107; *Burlington*, 548 U.S. at 68.

Cepada *has* sufficiently pled materially adverse action by alleging that after he filed the charge, he was: excluded from a PTA meeting;[26] and suspended and placed on administrative leave, which caused him to lose pay as a night school teacher.[27]

---

[25] *See* Am. Compl. ¶¶ 95-96; *Burlington*, 548 U.S. at 68 (occasional "abusive language" is insufficient to show retaliation (citation and internal quotation marks omitted)); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 241-43 (4th Cir. 1997) (employee failed to establish unlawful retaliation by alleging that after she filed a discrimination claim, her manager yelled at her and told others to ignore and spy on her).

[26] Am. Compl. ¶¶ 101, 110; *cf. Burlington*, 548 U.S. at 69 (excluding an employee from a professional training lunch can be a materially adverse action).

[27] Am. Compl. ¶ 43; *id.* at 15; *see, e.g., Burlington*, 548 U.S. at 72-73 (suspension without pay can be a materially adverse action); *see also Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001), *abrogated on other grounds by Burlington*, 548 U.S. 53.

Although the Board argues that Cepada was placed on leave for assaulting two students, not for opposing the school's discriminatory treatment, Mot. to Dismiss 7, Cepada has alleged that the administration knew that surveillance video did not support the students' accusations, Am. Compl. ¶¶ 100, 109. Cepada has also alleged that his union and superintendent confirmed that he could not return to his classroom until after the EEO investigation. *See id.* ¶¶ 103-04, 112-13. Thus, Cepada is entitled to the reasonable inference that he was placed and kept on leave for filing a discrimination charge with the Board's EEO office. *See Iqbal*, 129 S. Ct. at 1949.

Because Cepada has alleged that he was excluded from the PTA meeting and suspended without pay as a night school teacher less than two weeks after he filed the EEO charge, a causal connection may be inferred.[28] Thus, Cepada has stated a retaliation claim under Title VII and § 1981.

Accordingly, the Board's motion to dismiss Counts Five and Six must be denied.

---

[28] *See, e.g.*, *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (employee who suffered a materially adverse action ten weeks after filing a complaint with his employer's EEO office stated a *prima facie* retaliation claim (*citing Price*, 380 F.3d at 213)).

III. Conclusion

For the reasons stated above, the Board's motion to dismiss will be granted on Counts One, Two, and Three for Cepada's failure to promote and disparate treatment claims, and Count Four; and denied on Counts One, Two, and Three for his hostile work environment claim, and Counts Five and Six.

_____4/27/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge